# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No. 21-cr-105 (APM) |
| : | |
| **HENRY MUNTZER** : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

The United States of America hereby respectfully submits its reply in support of its motion for the entry of a protective order governing the production of discovery by the parties in the above-captioned case.

## Background

Defendant Muntzer is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. In brief, on January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. Members of a large crowd gathered on the Capitol grounds, and subsequently forced entry into the U.S. Capitol. Scores of individuals entered the U.S. Capitol without authority to be there. Members of the crowd committed numerous acts of violence and destruction of property, including breaking windows and assaulting members of law enforcement, while others in the crowd encouraged and assisted in those acts. As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of

unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Attack."

Because such a large number of people, including defendant Muntzer, joined the mob involved in the Capitol Attack, the resulting criminal investigation (and related discovery) into this incident is simply enormous. To date, hundreds of individuals have been charged and hundreds more are being investigated. The investigation already involves thousands of hours of video, over a thousand electronic devices, thousands of reports, and the numbers just continue to grow as more suspects are identified and arrested. Moreover, there are specific and prominent security concerns at issue as well – namely ensuring the continued safety of those working in the Capitol, while simultaneously prosecuting those who attacked them.

Ultimately, in order to comply with its discovery and disclosure obligations, the government intends to make voluminous amounts of materials available to those involved in the pending cases that arise out of the events of January 6, 2021, including this one. These materials will include information such as tips, witness statements, and the results of searches performed upon other individuals' devices and accounts. Given the volume of material that is likely to be made accessible to defendant Muntzer, the proposed order ensures that this information, where appropriate, will be adequately protected. As noted in its Motion for Protective Order, the government's request for the entry of a protective order is based on both the nature and larger context of the investigation into the events of January 6, 2021, and the need to provide discovery effectively and efficiently to defendant Muntzer.

On March 29, 2021, the government contacted defense counsel David Bos about the proposed protective order and requested his position. On April 14, 2021, defense counsel notified the government that he opposed the government's protective order, and on April 15, 2021, the

government filed it motion in support of the proposed protective order. On April 22, 2021, defense counsel filed his opposition to the protective order.

In his opposition, defense counsel contends that the government has failed to show good cause for the protective order and presents essentially two arguments in support of his opposition. First, defense counsel argues that the government has "not sufficiently justified the need for a protective order in *this case*," and second, that "the protective order sought by the government violates Mr. Muntzer right to an adequate defense, is unduly burdensome for the defense, and prevents defense counsel from discharging his ethical obligations." *See* Defendant's Motion at p. 1. Defense counsel's arguments are without merit.

## Argument

### 1. There is Good Cause to Support The Issuance of The Protective Order.

Defense counsel claims that the government has failed "to articulate specific facts that demonstrate an alleged harm that would occur in the absence of a protective order in this case." *See* Defendant's Motion at p. 3. Defense counsel further argues that the "government further fails to identify the potential harm or injury in this case that needs protection." *Id.* Indeed, defense counsel suggests that the "better course is to have the government turn over all the material that defense is entitled pursuant to Rule 16," and then litigate before this Court its justification for classifying any materials as "Sensitive," or "Highly Sensitive." *Id.* at p. 4.

In making this argument, defense counsel blithely ignores the larger context of this investigation and the rationale behind the government's request for a protective order. The Government represents, and defense counsel does not dispute, that it will provide a vast amount and array of discovery materials, including audio recordings, transcripts, computer files, business records, telephone records, and other materials. Indeed, the investigation already involves thousands of hours

3

of video, over a thousand electronic devices, thousands of reports, and the numbers continue to grow as more suspects are identified and arrested. These materials are very likely to contain sensitive information, and in the proposed protective order, the government provided an illustrative list of the materials that might fall under the "Sensitive" and "Highly Sensitive" designations.[1] Thus, with the proposed protective order, the government is balancing the dual responsibilities of satisfying its discovery obligations in the most expeditious manner possible, while protecting the safety of both witnesses and persons working within the Capitol.

By requiring the government to identify the specific materials in this case, defense counsel ignores these dual responsibilities and disregards the larger context and rationale of the protective order, as well as the large scale of the discovery involved in this case. As Judge McFadden recently noted in his Memorandum Opinion in *United States v. Cudd*, 21-cr-00068(TNM), "[r]equiring the Government to perform this review prior to disclosure would cause a substantial delay in discovery, which "is inconsistent with rules requiring efficient and expeditious discovery."[2] *Id.* at p. 5-6. The proposed protective order is necessary to facilitate the government's ability to provide voluminous discoverable materials expeditiously, while adequately protecting the United States'

---

[1] Some of the illustrative examples cited in the protective order as the types of items that would be marked as either "Sensitive" or "Highly Sensitive," include: (f.) Sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges; (g.) Surveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds; (h.) Repair estimates from the Architect of the Capitol; and (i.) Materials designated as "security information" pursuant 2 U.S.C. §1979.

[2] Citing *United States v. Dixon*, 355 F. Supp. 3d 1, 8; *see also* LCrR 5.1(a) (requiring the Government to "make good-faith efforts to disclose" information that could favor the accused "*as soon as reasonably possible* after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case" (emphasis added)).

legitimate interests. *See id.* at p. 6 ("[t]he proposed order is necessary to facilitate speedy disclosure here. That . . . drives the Government's proposed order.")

Moreover, as stated in Paragraph 1 of the proposed order, the "government agrees to make every effort to provide discovery in a manner that will allow for most discovery to be produced without such designations." To that end, the proposed order identifies a list of materials that the government anticipates should be labeled as "Sensitive" and "Highly Sensitive," and covered by the protective order. Thus, defense counsel already has insight and an understanding of the type of documents and evidence that will be marked with these classifications. Further, should the government somehow over-reach, the proposed protective order sets forth a way to address any missteps. Pursuant to Paragraph 8 of the proposed order, the parties are required to make a good faith effort to resolve any dispute about a sensitivity designation before requesting the Court's intervention. Defense counsel could simply reach out to the government to ask that the sensitivity designation be reduced or removed.

The beauty of having this protective order in place from the beginning is that, instead of delaying production of evidence until after the issue is litigated document by document, it allows the government to get the relevant evidence to the defense as quickly as possible and, thereby allows the defense to use that evidence for its primary purpose -- to prepare for the case. At the same time, the protective order sets up a procedure on the backend to deal with disagreements about particular items in a reasonable and informed manner. This is critical in such a large and complex case such as this one, with such a voluminous amount of evidence.

2. **The protective order does not violate the defendant's right to an adequate defense, is not burdensome and does not compromise defense counsel's ethical considerations.**

Defense counsel argues that the protective order violates defendant Muntzer's right to an adequate defense, is unduly burdensome for the defense, and prevents defense counsel from discharging his ethical obligations. In support of these arguments, defense counsel claims that the protective order (1) prohibits defense counsel from providing his client with a copy of certain materials or viewing them without being supervised; and (2) requires defendant Muntzer to sign and abide by the conditions contained in the Attachment A/Defendant's Acceptance. *See* Defendant's Motion at p. 5-6.

    a.    **Restrictions regarding Sensitive and Highly Sensitive Materials:** Defense counsel's claims that the protective order is burdensome in that the order restricts defendant Muntzer's access to materials marked as "Sensitive" and "Highly Sensitive." *See* Defendant's Motion at p. 5. Indeed, defense counsel claims that the "government has not set forth any legitimate justification for these restrictions in this case." *Id.* at p. 5. Defense counsel then suggests that these restrictions are unduly burdensome and violates the defendant's right to an adequate defense.

To the contrary, the government has provided ample justification for its request to limit defendant Muntzer's unencumbered access to these documents. As previously noted, there are significant and articulable security and privacy concerns at stake in the Capitol Attack investigation. *See* Judge McFadden Memorandum Opinion at p. 8 ("[T]hese limits on the use of sensitive information are appropriate here, given the privacy and security concerns at stake." (*citing United States v. Dixon,* 355 F. Supp. 3d 1, 7 (rejecting defendant's argument "that he has an

6

unfettered right to [sensitive material] in perpetuity and for any purpose" and finding that "[t]here is nothing per se improper with limiting the material defense counsel can provide to his client"))

Moreover, the protective order does not violate defendant Muntzer's right to an adequate defense as defendant Muntzer and his legal defense team have access to all the information that is subject to the order to use in formulating a defense. *See United States v. Cordova*, 806 F.3d 1085, 1090–91 (explaining that a protective order did not prejudice defendants, in part, because "defense counsel had full and unfettered access to the Jencks materials at all relevant times, and the protective order did not otherwise limit their ability to discuss the materials with [the defendants] or to obtain their input" notwithstanding that defendants' "individual use and access were subject to conditions"). Defense counsel also fails to acknowledge that defendant will have full and unsupervised access to all materials that are designated "Sensitive." The government is confident that only a small subset of materials will be subject to the "Highly Sensitive" designation. Finally, the protective order specifically authorizes defendant Muntzer to either seek modification of the order at any time, or object to the Government's designation of materials as sensitive.

b.  **Attachment A/Defendant's Acceptance**: Defense counsel objects to his client's acceptance of the protective order as contemplated in "Attachment A" of the proposed order (hereinafter "Attachment A/Defendant's Acceptance"). [3] In support of his objection to Attachment

---

[3]  Attachment A, which bears the heading of "Defendant's Acceptance" asks defendants to sign the attachment indicating the following:

> I have read this Protective Order and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Protective Order and all matters relating to it. I fully understand this Protective Order and voluntarily agree to it. No threats have been

7

A/Defendant's Acceptance, defense counsel argues that there are "two provisions of the proposed order [that] adequately ensure that the materials subject to the proposed protective order will not be disclosed to unauthorized persons." *See* Defendant's Motion at p. 6.  Defense counsel misses the rationale behind the inclusion of Attachment A/Defendant's Affidavit.

Due to the unique aspects of the Capitol Attack cases, Attachment A/Defendant's Acceptance provides an important enforcement mechanism for securing the safe handling of discovery.  Defendant Muntzer will have access to a large amount of discovery --- both specific to his own case and regarding Capitol Attack cases in general.  Indeed, in order to comply with its discovery and disclosure obligations, the government intends to make voluminous materials available in all pending cases arising out of the events of January 6, 2021, including this one. These materials will include, but not limited to, thousands of videos collected in the multitude of investigations, as well as tips, witness statements, and the results of searches performed upon other individuals' devices and accounts.

Additionally, Capitol Attack cases often create additional challenges.  As in this case, defendants are geographically separated from their defense counsel.  Also, the COVID-19 pandemic continues to pose obstacles that render in-person meetings complicated at best.[4]  Due to these considerations, such wide-spread access of sensitive information creates the additional risk

---

made to me, nor am I under the influence of anything that could impede my ability to understand this Protective Order fully.

---

[4] The two recent standard orders from the District Court for the District of Columbia regarding court functions in light of the COVID-19 pandemic, Standing Order 21-14, In Re: Fourth Extension of Authorization for Use of Video Teleconferences and Teleconferencing for Certain Criminal Juvenile Delinquency Proceedings, and Standing Order 21-20, In Re: Modified Restrictions on Access to Courthouse During the Covid-19 Pandemic, both recognize the importance of limiting personal interactions, social distancing when necessary and use of masks.

that sensitive information will be mishandled. As a result, the proposed protective order contemplates defendants will be given discovery in order to facilitate its review, but with restrictions placed on the use and handling of discovery labeled as sensitive and highly sensitive. Defendant Muntzer's written acceptance in Attachment A/Defendant's Acceptance offsets those risks by ensuring he is aware of the protective order and exactly how he should treat the sensitive information. Hopefully, the actual signing of Attachment A/Defendant's Acceptance should highlight to defendant Muntzer the importance of following the limitations set forth in the protective order, as well as the seriousness of properly handling applicable discovery.

Attachment A/Defendant's Acceptance also ensures enforcement of the order by providing accountability if defendant Muntzer violates the order. Without Attachment A, defense counsel would be a necessary witness to establish a knowing violation of the Order. Counsel would have to establish that the order was properly explained to their client and that defendant Muntzer understood how the sensitive and highly sensitive information needed to be handled. With Attachment A, Defendant Muntzer's signature would confirm that he understood the Order. Without such an acceptance on the record, defendant Muntzer could easily skirt responsibility for violating the order by asserting --- whether sincere or feigned --- that he was either unaware of the order or did not fully understand it.

Moreover, the larger context of the Capitol Attack, and the very nature of the charged offenses against defendant Muntzer, further demonstrates good cause for requiring defendant Muntzer to sign Attachment A/Defendant's Acceptance. Notably, the Capitol Attack not only involved members of a large crowd forcing entry into the U.S. Capitol, and thereby preventing the Joint Session to break from their proceedings, but also members of the crowd that brazenly

9

photographed, recorded, posted on social media and bragged about their crimes in doing so --- including defendant Muntzer.

Indeed, on the same day as he breached the U.S. Capitol, defendant Muntzer proudly broadcast his involvement in the Capitol Riot during an interview with the media. Such blatant disregard for criminal behavior and the functions of the U.S. government indicates a potential brazenness in disregarding orders from this Court. In order to facilitate providing discovery, defendant Muntzer will necessarily be placed in a position of trust to properly handle sensitive and highly sensitive discovery. His obligation to follow this Court's orders will be the only restraint guarding against mishandling such evidence, including the possibility of posting sensitive information on social media. Consequently, the very nature of the charged offenses provides further good cause to require defendant Muntzer's written acceptance of the protective order via Attachment A/Defendant's Acceptance to further ensure its enforcement.

    c.    **<u>Prior acceptance of the protective order</u>**. Finally, the reasonableness of the proposed protective order is demonstrated by the fact that defendant Muntzer's counsel has not opposed this same Protective Order in several other cases that involve the January 6th Capitol riots. *See U.S. v. Michael Sparks*, 21-CR-87 (TJK); *U.S. v. Thompson et al*, 21-cr-161 (RBW). Moreover, this Court has already adopted the proposed protective order without opposition in Capitol Attack cases, with or without minor modifications. *See U.S. v. Thomas Caldwell, et al.* (Oath Keepers), 21-cr-28; *U.S. v. Jorge Riley,* 21-cr-69, *U.S. v. Peter Schwartz*, 21-cr-186. In addition, other Courts have recently held that there is good cause to issue the government's

proposed protective order over defense objections in the Capitol attack cases. *See U.S. v. Cudd*, 21-cr-68 (TNM); *U.S. v. McCaughey III*, 21-cr-40(TNM).[5]

## Conclusion

In sum, there is good cause to enter the government's proposed protective order. The entry of the order will facilitate the government's ability to provide voluminous discoverable materials expeditiously while adequately protecting the United States' legitimate interests. The protective order is reasonable. In the event of a dispute, the protective order authorizes the government to remove or reduce a sensitivity designation after a discussion with defense counsel. Furthermore, whenever the redaction of specified information will resolve the basis for which a sensitivity designation was applied, the protective order provides that the government will agree to redaction, and such redaction will render the materials at issue no longer subject to the Order. In addition, the protective order explicitly exempts materials that (1) are, or later become, part of the public court record, (2) were derived directly from the defendant or that pertain solely to the defendant – e.g., defendant's own financial records, telephone records, digital device downloads, social media records, electronic communications, arrest records, and statements to law enforcement, or (3) that the defense obtains by means other than discovery. Finally, the protective order is clear that the burden for showing the need for any sensitivity designation always remains with the United States.

---

[5] *See also* Judges Bates (*see U.S. v. Klein*, 21-cr-236), Berman Jackson (*see U.S. v. Black*, 21-cr-127), Boasberg (*see U.S. v. Jancart*, 21-cr-148), Brown Jackson (*see U.S. v. Nichols*, 21-cr-117), Cooper (*see U.S. v. Barber*, 21-cr-228), Kelly (*see U.S. v. Strong*, 21-cr-114), Kollar-Kotelly (*see U.S. v. Caldwell*, 21-cr-181), Lamberth (*see U.S. v. Munchel*, 21-cr-118), McFadden (*see U.S. v. Fellows*, 21-cr-83), Moss (*U.S. v. Montgomery*, 21-cr-46), Nichols (*see U.S. v. Miller*, 21-cr-119), Sullivan (*see U.S. v. Bonet*, 21-cr-121), and Walton (*see U.S. v. Goodwyn*, 21-cr-153), in addition to Magistrate Judges Faruqui (*see US v. Williams, 21-mj-99*), Harvey (*see U.S. v. Adams*, 21-mj-291), and Meriweather (*see U.S. v. Hernandez*, 21-mj-73).

**Conclusion**

For these reasons and those stated in its initial motion, the government has demonstrated the good cause required for the Court to issue a protective order governing the production of discovery in this matter. *See United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); *Cordova*, 806 F.3d at 1090 ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        DC Bar No. 415793


By:      /s/ Vivien Cockburn
        Vivien Cockburn
        Assistant United States Attorney
        555 Fourth Street, N.W.,
        Washington, DC  20530
        Vivien.cockburn@usdoj.gov
        (202) 252-7245