**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | **:** | |
| **UNITED STATES OF AMERICA** | **:** | **Case No.: 1:21-cr-105 (JMC)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **HENRY PHILLIP MUNTZER,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

**GOVERNMENT RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR A JUDGEMENT OF ACQUITTAL AS TO COUNT TWO**

The defendant, Henry Muntzer, has moved for a judgement of acquittal as to Count Two of the superseding indictment, which charges him with violating 18 U.S.C. § 231(a)(3) (civil disorder). ECF No. 90 ("Def.'s Mot."). Muntzer argues that 18 U.S.C. § 231(a)(3) is unconstitutionally vague, it exceeds Congress's Commerce Clause Authority, and that it is a content-based restriction on expression. *Id.* at 1-2. Taking the evidence in the light most favorable to the government, the Court, as a rational trier of fact, properly found the essential elements of Count Two were proven beyond a reasonable doubt. Muntzer's positions have been rejected by a number of judges in this district – including this Court. The Court should deny Muntzer's motion.

**I.      Procedural History**

On January 18, 2023, a grand jury sitting in this district charged Muntzer by superseding indictment with two felonies and four misdemeanors related to his actions at the U.S. Capitol on January 6, 2021: Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Two); Entering and Remaining in a Restricted Building or Ground, in violation of 18 U.S.C. § 1752(a)(1) (Count

1

Three); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Four); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). ECF No. 50.

On February 7, 2024, the Court convicted Muntzer of all charges in the superseding indictment after a two-day bench trial. ECF Nos. 80, 85-87.

On May 21, 2024, Muntzer filed the instant motion for a judgement of acquittal as to Count Two. ("Def.'s Mot.").

## II.    Legal Standard

Federal Rule of Criminal Procedure 29(a) provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When ruling on a motion for judgment of acquittal, the Court must "consider[ ] the evidence in the light most favorable to the government and determin[e] whether, so read, it is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt." *United States v. Kayode*, 254 F.3d 204, 212-13 (D.C. Cir. 2001) (quoting *United States v. Harrington*, 108 F.3d 1460, 1464 (D.C. Cir. 1997)).   A defendant's Rule 29 burden at the post-verdict stage is "very high," in part because evidence to support a conviction does "not need to be overwhelming."  *United States v. Pasha*, 797 F.3d 1122, 1135 n.9 (D.C. Cir. 2015).

The Court must "accord[ ] the government the benefit of all legitimate inferences," *United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983), and deny the motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Arrington*, 309 F.3d 40, 48 (D.C. Cir. 2002) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The same standard applies in the context of a bench or a jury trial. *See, e.g.*, *United States v. Salman*, 378 F.3d 1266, 1267 n.3 (11th Cir. 2004); *United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998) ("The same test applies to both jury and bench trials.").

Taking the evidence in the light most favorable to the government, the Court, as a rational trier of fact, properly found the essential elements of Count Two were proven beyond a reasonable doubt.

## III.    Argument

Muntzer cannot cite any court in this District or otherwise which has adopted his arguments. And, as he acknowledges, the Eleventh Circuit recently rejected many of his arguments.  *United States v. Pugh*, 90 F.4th 1318, 1323 (11th Cir. 2024). All of Muntzer's arguments fail. First, Section 231(a)(3) is not vague.  Second, it was within Congress' commerce and plenary authority to enact (and even if it were, Muntzer was properly convicted under an alternate jurisdictional element).  Third, it is not an overbroad regulation of First Amendment rights, and it is a facially neutral law, not a content-based regulation that would trigger strict scrutiny.

**A.      18 U.S.C. § 231(a)(3) is Not Unconstitutionally Vague.**

Count Two of the Superseding Indictment provides fair notice to Muntzer of the conduct it punishes and is therefore not unconstitutionally vague. A number of judges in this district – including this Court – have rejected similar challenges to § 231. *See e.g.*, *United States v. Samsel, et al.,* 21-cr-537 (JMC), ECF No. 240; *United States v. Mock*, No. 21-CR-444 (JEB), 2023 WL 3844604, at *5 (D.D.C. June 6, 2023); *United States v. Gossjankowski*, No. 21-CR-123 (PLF), ECF No. 103, 2023 WL 130817, at 11-13 (D.D.C. Jan. 9, 2023); *United States v. Fischer*, No. 21-CR-234 (CJN), ECF No. 64, 2022 WL 782413, at *2-3 (D.D.C. March 15, 2022) (reversed on other grounds); *United States v. Nordean*, 579 F. Supp. 3d 28, 57-58 (D.D.C. 2021); *United States v. Bingert*, 605 F. Supp. 3d 111, 128-130 (D.D.C. 2022); *United States v. McHugh*, 583 F. Supp. 3d 1, 26-28 (D.D.C. 2022) (JDB); *United States v. Williams*, No. 21-CR-618 (ABJ), ECF No. 55, 2022 WL 2237301, at *4-5 (D.D.C. June 22, 2022).[1]

The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

---

[1] Several courts outside this circuit have also rejected similar challenges to § 231(a)(3). *See e.g.*, *United States v. Phomma*, 561 F. Supp. 3d 1059, 1069-70 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-CR-104 (NEV/TNL), 2021 WL 1341632, at *16-20 (D. Minn. Jan. 6, 2021); *United States v. Wood*, No. 20-CR-56 (MN), 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-CR-28 (PP), 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See United States v. Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-CR-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Section 231(a)(3) is not unconstitutionally vague. It provides sufficient notice of the conduct it prohibits. The terms with which Muntzer takes issue – "any act," "to obstruct, impede,

or interfere," "incident to and during the commission of a civil disorder," and "in any way obstructs, delays, or adversely affects commerce" – do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595; *see also Nordean*, 579 F. Supp. 3d at 57 (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder.") Like the similar challenge denied by Judge Bates, Muntzer's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation – the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh*, 583 F. Supp. 3d at 27.

Contrary to Muntzer's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind. *See Nordean*, 579 F. Supp. 3d at 57; *see also Williams*, 553 U.S. 306 (citing *Coates*, 402 U.S. at 614); *United States v. Kozminski*, 487 U.S. 931, 949-50 (1988). This Court has "determine[d] that a person of ordinary intelligence would understand what conduct is prohibited by § 231(a)(3)." *Samsel,* 21-cr-537 (JMC), ECF No. 240 at 8; *see also McHugh*, 583 F. Supp. 3d at 27 ("An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement."). In addition, § 231 is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.*, 26 U.S.C. §

7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice*, 926 F.2d 925, 930-31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties).

Muntzer also raises a meritless claim that the phrase "incident to and during the commission of a civil disorder" is vague because he cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. Def.'s Mot. at 4. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a)(3)." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971); *see also United States v. Howard*, 2021 WL 3856290, at *14 (E.D. Wis. Aug. 30, 2021) ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Muntzer's argument that any "tumultuous public gathering" could qualify (Def.'s Mot. at 4), "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 231(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See also McHugh*, 583 F. Supp. 3d at 26, n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," § 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to <u>narrow</u> the situation where the statute may apply – unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make § 231 vague; to the contrary, it limits its application.

Muntzer's vagueness claim also fails because his conduct clearly falls within the ambit of § 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean*, 579 F. Supp. 3d at 57 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (cleaned up)); *see generally United States v. Wood*, 2021 WL 3048448, at *9 (D. Del. July 20, 2021) ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute] is vague as applied to his conduct"). The January 6, 2021 attack on the United States Capitol was a "civil disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Muntzer participated in the disorder through his actions inside the Capitol. Muntzer crossed into the restricted area, entered the Capitol, and physically battled multiple police officers inside to breach the legislative chambers that the officers were defending. Muntzer was not a bystander, he was an active participant in a civil disorder. Tracking the statutory language, the Superseding Indictment alleges that he "commit[ted] an act to obstruct, impede, and interfere with a law enforcement officer." The statute is "sufficiently clear

8

that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

Muntzer's argument that § 231(a)(3) is vague because it lacks an express scienter requirement or *mens rea* is also wrong. Muntzer ignores the fact that § 231(a)(3) requires *intent*, which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad); *Samsel,* 21-cr-537 (JMC), ECF No. 240 at 6 (citing to *McHugh*, 583 F. Supp. 3d at 1, 25). The statute requires proof that the "act" was done "to obstruct, impede, or interfere" with a law enforcement officer, *i.e.*, the defendant's purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 (construing § 231(a)(3) to include an intent requirement).

Judge Berman Jackson reached the same result in *United States v. Riley Williams*, 21-cr-0618, 2022 WL 2237301, at *6-7 (D.D.C. June 22, 2022). She noted that "a *scienter* requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at *7 (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)). She concluded that § 231(a)(3) "only criminalizes acts performed 'to obstruct, impede, or interfere with' a law enforcement officer," "in other words, the statute requires obstructive intent." *Id*; s*ee also Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) ("It is true that section 231(a)(3) does not specifically refer to intent, but it only applies to a person who 'commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers."); *Mechanic*, 454 F.2d at 854 (agreeing with *Foran* "that § 231(a)(3) must be construed to require intent").

This Court "agrees with other courts that have considered the issue and concludes that § 231(a)(3) requires defendants to have acted intentionally." *Samsel,* 21-cr-537 (JMC), ECF No. 240 at 7 (citing to Williams, 2022 WL 2237301, at *7; United States v. Fischer, 2022 WL 782413, at *3 (D.D.C. Mar. 15, 2022); McHugh, 583 F. Supp. 3d at 25).

And even if the statute lacked an express scienter requirement, courts, "generally interpret [] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

**B.      SECTION 231 IS WITHIN CONGRESS' PLENARY POWER AND COMMERCE CLAUSE AUTHORITY, AND THE GOVERNMENT ALSO PROVED MUNTZER'S GUILT UNDER AN ALTERNATE JURISDICTIONAL ELEMENT, SO ANY ERROR WOULD BE HARMLESS .**

Muntzer's Commerce Clause claims fail because: 1) Congress has plenary power under Article I, Section 8, Clause 17, to legislate regarding matters affecting the District of Columbia; 2) the statute is within Congress's Commerce Clause authority because the statute includes an express jurisdictional element; and 3) the evidence is sufficient to sustain Muntzer's guilt under the "federally protection function" element of § 231, which is an alternative to the commerce requirement, and which Muntzer fails to challenge.  Therefore, even if Muntzer's § 231 conviction based on the civil disorder's affect on commerce was struck down, it could still be sustained based on the civil disorder's affect on federally protection functions, and any error would thus be harmless.

*Congress Has Plenary Authority*

Muntzer contends that Section "231(a)(3) exceeds Congress's Commerce Clause authority." Def.'s Mot. at 1. He relies principally on *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000), which held, respectively, that Congress exceeded its authority under the Commerce Clause by enacting the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), and the Violence Against Woman Act of 1994, § 40302, 108 Stat. 1941-42, 42 U.S.C. § 13981(b). *Lopez*, 514 U.S. at 568; *Morrison*, 529 U.S. at 617. Def.'s Mot. at 2, 7-12.

This claim fails. Regardless of whether § 231(a)(3) exceeds Congress's power under the Commerce Clause—and it does not, as discussed below—for cases such as Muntzer's involving criminal conduct committed wholly within the District of Columbia, the statute fits comfortably within Congress's power under Article I, Section 8, Clause 17, as Judge Kollar-Kotelly has recognized. *United States v. Grider*, 617 F. Supp. 3d 42, 50 (D.D.C. 2022).

Article I, Section 8, Clause 17 states:

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States….

U.S. Const. Art. I, § 8, Cl. 17.

Congress's power under Clause 17 "is plenary." *Palmore v. United States*, 411 U.S. 397 (1973). "Not only may statutes of Congress of otherwise nationwide application be applied to the District of Columbia, but Congress may also exercise all the police and regulatory powers which a state legislature or municipal government would have in legislating for state or local purposes." *Id.* "Congress 'may exercise within the District all legislative powers that the legislature of a state

might exercise within the State … so long as it does not contravene any provision of the constitution of the United States.'" *Id.* (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 5 (1899)). "Congress may legislate within the District for every proper purpose of government," and "[w]ithin the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments." *Neild v. D.C.*, 110 F.2d 246, 249 (D.C. Cir. 1940) (citing *Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838); *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427 1932); and *O'Donoghue v. United States*, 289 U.S. 516 (1933)). "[W]hen it legislates for the District, Congress … exercise[es] complete legislative control as contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the boundaries of the states, on the other. *Neild v. District of Columbia*, 110 F.2d 246, 250-251 (D.C. Cir. 1940); s*ee also Hyde v. S. Ry. Co*., 31 App. D.C. 466, 469 (D.C. Cir. 1908) ("The legislative power of Congress over the District of Columbia and the Territories [is] plenary, and [is] not depending upon the interstate-commerce clause").

By enacting § 231(a)(3), Congress relied on its Clause 17 power with respect to the District of Columbia. 18 U.S.C. § 231(a)(3) prohibits "any act" that "obstruct[s], impede[s], or interfere[s] with any … law enforcement officer … engaged in [his]official duties incident to and during the commission of a civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 231(a)(3)(emphasis added). "Commerce," as used in § 231(a)(3), "means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points

within any State or the District of Columbia, but through any place outside thereof; or (C) *wholly within the District of Columbia*." 18 U.S.C. 18 U.S.C.A. § 232(2) (emphasis added).

Here, Count Two of the Superseding Indictment charges that Muntzer "obstructed and attempted to obstruct a law enforcement officer … incident to a civil disorder" that "adversely affected" "in any way or degree" "commerce," meaning, *inter alia*, commerce "wholly within the District of Columbia." ECF No. 50. Regardless of whether Congress had authority under the Commerce Clause to regulate such conduct in jurisdictions other than the District of Columbia, it did not and could not exceed its "plenary authority" to exercise "police power" within the District of Columbia unless that exercise violated some other provision of the Constitution. Muntzer fails to identify any constitutional provision that § 231(a)(3)'s enactment would or does violate. *See generally Darnell v. Markwood*, 220 F.2d 374, 375–77 (D.C. Cir. 1954) (reversing dismissal of complaint under the Sherman Act, 15 U.S.C. §§ 1, 2, and 3, alleging that defendants "restrain[ed] interstate trade and commerce, and trade and commerce in the District" of Columbia; although defendants' activities wholly within the District of Columbia "do not come within the control of the Commerce Clause, or, therefore, within either Sections 1 or 2 of the Sherman Act, "Section 3 … is not dependent upon the Commerce Clause but rests upon the plenary legislative power of Congress within the District of Columbia").

In *Lopez* and *Morrison*, the Court stressed how Congress's Commerce Clause power was cabined by the retained authority of the states to regulate commerce wholly within their borders. "The Constitution requires a distinction between what is truly national and what is truly local." *Morrison*, 529 U.S. at 617-28 (citing *Lopez*, 514 U.S., at 568); *Lopez*, 514 U.S. at U.S. at 559 ("the proper test [for the scope of Congress's power under the Commerce Clause] requires an analysis

13

of whether the regulated activity 'substantially affects' interstate commerce"); *id*. at 564 ("if we were to accept the Government's arguments [that the Gun Free Schools Zone Act did not exceed Congress's powers under the Commerce Clause], we are hard pressed to posit any activity by an individual that Congress is without power to regulate"). Although it is without power to regulate purely intrastate commercial matters, Congress has plenary authority to regulate wholly local matters within the District of Columbia.

Additionally, Congress may "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Morrison*, 529 U.S. at 617. "The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id*. at 616. By contrast, "the power of Congress under Clause 17 permits it to legislate for the District in a manner with respect to subjects that would exceed its powers, or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it under Art. I, § 8." *Palmore*, 411 U.S. at 397-98.

Because Clause 17, rather than Clause 3, provided Congress with plenary authority to prohibit conduct that had any effect whatsoever on commerce within the District of Columbia, Muntzer's challenges to the commerce element of § 231(a)(3) are beside the point, because all are grounded upon limitations on Congress's power under Clause 3. Def.'s Mot. at 2, 7-14, 21.

Indeed, even for criminal statutes with national application that do not single out commerce within the District for special protection, as § 232(2)(C) does with respect to § 231(a)(3), Commerce Clause challenges to prosecutions for crimes occurring wholly within the District must fail. *See United States v. Mahdi*, 598 F.3d 883, 896 (D.C. Cir. 2010) (rejecting claim that VICAR,

18 U.S.C. § 1959, "is facially unconstitutional as it violates the Commerce Clause"; "[I]t is impossible to see how a statute regulating conduct within the District of Columbia could exceed congressional authority under the Commerce Clause"); *accord United States v. Carson*, 455 F.3d 336, 368 (D.C. Cir. 2006) ("Within the District, Congress did not need to rely on its Commerce Clause authority."). All the more reason why this Court should reject Muntzer's challenge to the commerce predicate in the § 231(a)(3) count, where Congress expressly targeted domestic disorders that affected commerce within the District.

*The Riot Adversely Affected Interstate Commerce*

Although this Court need not reach the issue, Chief Judge Boasberg, judges in other districts, and, most recently, the Eleventh Circuit have all held that Section 231(a)(3) does not exceed Congress's Commerce Clause authority, even when applied to conduct outside the District of Columbia. "[T]he Court concurs with the Government and the other district courts that § 231(a)(3) contains a jurisdictional element that ensures a sufficient connection to interstate commerce in each application." *Mostofsky*, 579 F. Supp. 3d at 20. "Section 231(a)(3) expressly limits the statute's sweep to instances where there is a civil disorder that affects interstate commerce and a defendant obstructs law-enforcement officials lawfully conducting their duties incident to such disorder." *Id.*; *see also United States v. Phomma*, 561 F. Supp. 3d at 1064–66 (D. Or. 2021) (notwithstanding *Lopez* and *Morrison*, "§ 231(a)(3) is within Congress's Commerce Clause authority because the statute includes an express jurisdictional element, requiring that the defendant's obstruction or interference with a law enforcement officer or firefighter must occur 'during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce.'"); *accord United States v. Pugh,* 90 F. 4th 1318, 1326 (11th Cir.

15

2024); *United States v. Rupert*, No. 20-cr-104, 2021 WL 1341632, at *16–20 (D. Minn. Jan. 6, 2021) (Report and Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *Howard*, 2021 WL 3856290, at *; *Wood*, 2021 WL 3048448, at *4–6; *United States v. Pugh*, 1:20-cr-00073- TFM-B, ECF95 at 7-11 (S.D. Ala., May 13, 2021); *see generally Huff*, 630 F. App'x at 484-85 (unpublished) (rejecting Commerce Clause challenge to a charge of transporting a firearm in furtherance of a civil disorder, in violation of 18 U.S.C. § 231(a)(2)).

In *Lopez*, 514 U.S. 549, the Supreme Court set forth three broad ways in which Congress may regulate under its commerce power: it may regulate use of channels of interstate commerce, it may protect persons or things in commerce, and it may address activities that have a substantial effect on commerce. *Id.* at 558-59. Muntzer's challenge concerns whether the third category of regulation allows Section 231(a)(3).[2]

Under *Lopez*, four factors determine whether an activity has a "substantial effect" on interstate commerce: "(1) whether the activity itself 'has anything to do with commerce or any sort of economic enterprise, however broadly one might define those terms'; (2) 'whether the statute in question contains an express jurisdictional element'; (3) 'whether there are express congressional findings or legislative history regarding the effects upon interstate commerce of the

___

[2] While the government's response focuses on Muntzer's challenge to Section 231(a)(3) as a valid regulation of activities that "substantially affect interstate commerce" (the third category under *Lopez*), the government reserves arguments that Section 231 is also justified under the two other categories of permissible commerce regulation. Civil disorders endanger the channels of commerce and persons and goods in commerce. The Supreme Court has explained that "the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." *Caminetti v. United States*, 242 U.S. 470, 491 (1917). Congress also may act to protect interstate commerce from a wide array of threats. *Heart of Atlanta Motel, Inc.*, 379 U.S. at 256-57 (identifying threats that Congress had regulated).

regulated activity'; and (4) 'whether the relationship between the regulated activity and interstate commerce is too attenuated to be regarded as substantial.' " *United States v. Reed*, No. 15-188, 2017 WL 3208458, at *8 (D.D.C. July 27, 2017) (quoting *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1068–69 (D.C. Cir. 2003)). Satisfying the jurisdictional element factor "is typically enough to satisfy the Commerce Clause." *Mostofsky,* 579 F. Supp. 3d at 16.

In both *Lopez* and *Morrison*, the challenged statutes contained no "jurisdictional element" that required the Government to prove that the offense conduct affected interstate commerce. *Lopez*, 514 U.S. at 561-62 (Gun Free Schools Zone Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," in contrast to former 18 U.S.C. § 1202(a), "which made it a crime for a felon to 'receiv[e], posses[s], or transpor[t] in commerce or affecting commerce ... any firearm"); *Morrison*, 529 U.S. at 613 (Violence Against Women Act, "[l]ike the Gun–Free School Zones Act at issue in *Lopez*, … contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"; "Congress elected to cast § 13981's remedy over a wider, and more purely intrastate, body of violent crime").

Unlike those statutes, § 231(a)(3) has an "explicit jurisdictional element" that requires the Government (when relying on the Commerce Clause alternative) to prove that the offense conduct interfered with interstate commerce. *Wood*, 2021 WL 3048448, at *4-6 (rejecting defense claim, based on *Morrison* and *Lopez*, that "§ 231(a)(3) unconstitutionally exceeds Congress's authority and intrudes into the States' primary role in general law enforcement because it broadly applies to purely local conduct and requires only an attenuated connection to interstate commerce"; "courts have held that 'despite *Lopez* and *Morrison*, the Government need only show a minimal effect on

17

interstate commerce when the statute contains an explicit jurisdictional element'") (quoting *Pugh*, 1:20-cr-00073-TFM-B, ECF95 at *9 and citing *United States v. Kukafka*, 478 F.3d 531 (3d Cir. 2007) (upholding "Deadbeat Parents Act" where the statute contains an explicit jurisdictional element limiting its reach to only interstate activity); *see also see also United States v. Pettaway*, 297 F. Supp. 3d 137, 144 (D.D.C. 2018) ("The D.C. Circuit held, in *Lopez*'s wake, that the magnitude of charged conduct's impact on interstate commerce needed to sustain a federal criminal statute's application turns on whether the statute contains a jurisdictional element.") (citing *United States v. Harrington*, 108 F.3d 1460, 1467 (D.C. Cir. 1997)); *Pugh*, 90 F.4th at 1327-1328 (rejecting the defendant's facial challenge under the Commerce Clause).

Contrary to Muntzer's argument, a statute need not criminalize only those acts that directly yield a substantial impact on interstate commerce in every individual case. "[J]urisdictional elements 'guarantee that each prosecution is a separate, independent application of the commerce power to regulate . . . meaning that "each case stands alone on its evidence that a concrete and specific effect does exist." *Pettaway*, 297 F. Supp. 3d at 144 (citing *Harrington,* 108 F.3d at 1466-67). As *Pettaway* further explained, *Lopez* "framed the relevant inquiry, in reviewing a prosecution under a statute containing a jurisdictional element, as whether 'the [conduct] in question affects interstate commerce'—not whether such conduct '*substantially* affects interstate commerce'—and instructed that such inquiry occur "on a case-by-case basis." *Id.* at 144 (citing *Lopez*, 514 U.S. at 561 (emphasis added)).

Notwithstanding the jurisdictional element, Muntzer argues that the acts criminalized under Section 231(a)(3) lack a sufficiently strong tie to commerce. In *Mostofsky*, Judge Boasberg methodically rejected each of these, finding:

- "when a person deliberately commits some act to obstruct, impede or interfere with those officers [who are 'attempting to quell an interference with interstate commerce'], that person is impacting interstate commerce";

- "[d]espite the actus reus being noneconomic. . . § 231(a)(3) may be upheld because [it] 'proscribe[s] conduct interfering with or affecting interstate commerce' in the form of either hurting a victim at work or disrupting efforts to contain a civil disorder that affects interstate commerce" (cleaned up)

- "'the incident to and during' language in § 231(a)(3) does not suggest that the 'act' or 'lawful performance of [an officer's] official duties' is somehow minimally related to the civil disorder. Rather, the most natural reading of the phrase is to indicate that those activities 'arise[ ] out of' or occur during the civil disorder, not that they are some tangential consequence far downstream from the disorder itself";

- "it is often the case that the circumstances around an act are what must affect interstate commerce even though the act itself is not commercial." (citing *Harrington*, 108 F.3d at 1469–70 ("We do not rest our holding on the understanding that the defendant was 'engaged in interstate commerce' when he participated in the robbery of the restaurant[;] ... rather, we rely on the undisputed fact that the restaurant was engaged in interstate commerce."));

- rejecting the claim that "the jurisdictional element is insufficient as it 'does not require a substantial effect on interstate commerce, but instead requires a civil disorder that affects commerce 'in any way or degree'" because the "substantiality" requirement does not apply in the context of determining what quantum of evidence is required to satisfy statutory interstate commerce jurisdictional elements" (citing *Harrington*, 108 F.3d at 1465); and further observing that a jurisdictional element substitutes for legislative findings regarding commerce (citing *Terry v. Reno*, 101 F.3d 1412, 1418 (D.C. Cir. 1996)); and

- rejecting the claim that "§ 231(a)(3) regulates criminal conduct without a sufficiently close connection with a commercial good or activity," observing that " '*Morrison* did not bar regulation of noneconomic conduct that affects interstate commerce in individual instances,'" (citing, *inter alia, Pettaway*, 297 F. Supp. 3d at 147–48) and that "Section 231 requires precisely a showing that the regulated conduct 'interferes with or otherwise affects commerce'."

*Mostofsky*, 579 F. Supp. 3d at 18-20.

The other on-point decisions agree. The Eleventh Circuit recently held that "the jurisdictional element of interstate commerce need not link directly to the criminalized act itself as

long as the object of the criminal act" – the civil disorder—"is sufficiently connected to interstate commerce." *Pugh*, 90 F. 4th at 1327; *see also Phomma*, 561 F.Supp.3d at 1065–66; *Howard*, 2021 WL 3856290, at *11; *Wood*, 2021 WL 3048448, at *6. "[U]nder the Commerce Clause, Congress may proscribe violent conduct when such conduct interferes with or otherwise affects commerce over which Congress has jurisdiction." *United States v. Hill*, 927 F.3d 188, 193 (4th Cir. 2019), *cert. denied*, 141 S. Ct. 272 (2020) (federal Hate Crimes Prevention Act of 2009, 18 U.S.C. § 249(a)(2), "may be constitutionally applied to an unarmed assault of a victim engaged in commercial activity at his place of work"). And contrary to Muntzer's contention that Congress's power under the Commerce Clause applies only to conduct that has a "substantial effect" on interstate commerce, "Congress may regulate violent conduct interfering with interstate commerce even when the conduct itself has a 'minimal' effect on such commerce." *Id.* (citing *Taylor v. United States*, 579 U.S. 301, 309 (2016) (upholding Hobbs Act conviction for robbery of a drug dealer; "where the target of a robbery is a drug dealer, proof that the defendant's conduct in and of itself affected or threatened commerce is not needed. All that is needed is proof that the defendant's conduct fell within a category of conduct that, in the aggregate, had the requisite effect.")

*Muntzer's Conduct Adversely Affected a Federally Protected Function*

Even if Muntzer's Commerce Clause arguments had merit – which they do not – he ignores a second theory available to the government to prove Muntzer violated § 231. An effect on commerce is only one of two ways by which a civil disorder may fall within § 231(a)(3), which criminalizes:

> commit[ing] or attempt[ing] to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects *commerce or the movement of any article*

*or commodity in commerce or the conduct **or** performance of any federally protected function.*

18 U.S.C. § 231(a)(3) (emphasis added).

As such, § 231(a)(3) is "a so-called 'divisible statute' . . . [that] sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile." *Descamps v. United States*, 570 U.S. 254, 257 (2013). As explained below, even if the government could not factually or legally prove that Muntzer's conduct affected commerce or the movement of any article or commodity in commerce (which the Government can, as discussed above), that would be no basis to acquit on Count Two. That's because the Indictment alleged an adverse effect on the performance of any federally protected function within the District of Columbia and the Court found this in its verdict. ECF No. 85 at 16.  That verdict was supported by the evidence, which showed "the interruption of the joint session of Congress as well as generally the USCP's mission and purpose to protect the Capitol and perform their official function as police officers." ECF No. 85 at 16.

Because Count Two can stand on the independent ground that the Capitol riot affected a federally protected function in the District of Columbia (as well as commerce within the District of Columbia and between the states), this Court need not resolve this claim. *Cf. Mostofsky*, 579 F. Supp. 3d at 15-16 ("Since the Court can resolve the Motion purely on Commerce Clause grounds, it need not decide at this point whether any 'federally protected function' was affected that day.").

Muntzer does not challenge if the government proved that his actions adversely affected a federally protected function or the Court's verdict that the government proved beyond a reasonable doubt that:

> the civil disorder of January 6th did, in fact, obstruct, delay, or adversely affect . . . [the] performance of any federally protected function . . . the interruption of the joint session of Congress as well as generally the USCP's mission and purpose to protect the Capitol and perform their official function as police officers.

ECF No. 85 at 16. Muntzer does not challenge this finding, nor Congress's ability to regulate federally protected functions.  Thus, even if his commerce-related challenge were to succeed, his conviction under the alternative "federally protected function" prong would stand regardless.

In summary, Muntzer ignores Congress' plenary authority and the "federally protected function" element, and he misunderstands the limits on Congress's commerce power. The Court should deny his motion.

### C.    18 U.S.C. § 231(a)(3) Does Not Run Afoul of the First Amendment.

Muntzer argues that § 231(a)(3) "imposes steep criminal penalties on an expansive range of speech and expressive conduct" and, "more fundamentally, [that] § 231(a)(3) was enacted for the express purpose of suppressing the content of speech that favored civil rights advocacy."[3] Def.'s Mot. at 14-15. Both arguments fail.

### *Section 231(a)(3) is Not Overbroad*

A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State*

---

[3] Muntzer introduces this legislative history argument, but never actually argues his point. Def.'s Mot. at 1, 14-15. Muntzer ignores this argument, and the Court should too.

And to the extent that this argument is based on the views of a single member of Congress, "what motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *United States v. O'Brien*, 391 U.S. 367, 384 (1968); *see also League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 939 (11th Cir. 2023) ("[A] statement or inquiry by a single legislator would constitute little evidence of discriminatory intent on the part of the legislature").

*Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)); *see also Williams*, 553 U.S. at 293; *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).  A facial overbreadth challenge faces a steep climb when the statute focuses mainly on conduct, as § 231(a)(3) assuredly does.  *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct").

Rejecting an overbreadth challenge in *Williams,* Judge Berman Jackson noted that "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not." *Williams,* 2022 WL 2237301, at *6.[4] Judge Berman Jackson "agree[d] with the reasoning in those decisions." *Id*. "First, the statute plainly covers conduct, not speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id*. (emphasis added). "Although some 'acts' could also serve an expressive function, and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity." *Id*. "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally

---

[4] Citing *McHugh*, 583 F. Supp. 3d at 17; *Mostofsky*, 579 F. Supp. 3d at 22-23; *Nordean*, 579 F. Supp. 3d at 57; and *Gossjankowski*, 2023 WL 130817, at *3. Judge Berman Jackson also cited three out of district cases that reached the same result. *Williams,* 2022 WL 2237301, at *6, citing *United States v. Howard*, 21-cr-28 (PP), 2021 WL 3856290, at *11-12 (E.D. Wis. Aug. 30, 2021); *United States v. Phomma*, 561 F. Supp. 3d 1059, 1067-68 (D. Or. 2021); and *United States v. Wood*, 20-cr-56 (MN), 2021 WL 3048448, at *7-8.

protected conduct,' it is not overbroad on its face." *Id.* (citing *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).

Other judges of this district – including this Court – are in accord. *See Samsel,* 21-cr-537 (JMC), ECF No. 240 at 8-10 ("Because the law does not sweep in an excessive amount of constitutionally protected speech, it is not overbroad."); *Fischer*, 2022 WL 782413, at *3-4 ("The text shows that § 231(a)(3) covers 'primarily, if not exclusively, conduct and unprotected speech, such as threats.'"); *Mostofsky*, 579 F. Supp. 3d at 22-24 (rejecting overbreadth challenge to § 231(a)(3) and observing that Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech"); *Nordean*, 579 F. Supp. 3d at 56-58 (§ 231(a)(3) is neither vague nor overbroad); *McHugh*, 583 F. Supp. 3d at 24-29 (same).

Those decisions are consistent with the applicable overbreadth principles. In the typical case, a litigant bringing a facial constitutional challenge "must establish that no set of circumstances exists under which the [law] would be valid," or the litigant must "show that the law lacks a plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quotation omitted). Refusing to enforce a statute because of overbreadth concerns is "strong medicine," and courts will do so on such grounds "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech," *Hicks*, 539 U.S. at 124. The requirement that a defendant who violates § 231(a)(3) act with the intent to obstruct, interfere, or impede is critical to the First Amendment analysis. *See United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987) (intent requirement prevents application of the statute to protected speech).

The Eighth Circuit's decision in *Mechanic*, rejecting an overbreadth challenge to § 231(a)(3), is particularly instructive. After noting that the statutory language "applies only to a person who acts to impede, obstruct, or interfere with an official described in the statute," the court held that "conduct involved here [the massing of a mob that threw stones at an R.O.T.C. building on a college campus to protest the Viet Nam war, followed by rock and bottle throwing at firemen who arrived to quell the disturbance] is not entitled to constitutional protection." 454 F.2d at 852. "The First Amendment has not been extended to protect rioting, inciting to riot, or other forms of physical violence." *Id*. (citing *Foran*, 411 F.2d at 937). Thus, § 231(a)(3) "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen." *Id*. "[I]t is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Id*. Muntzer, like in *Mechanic*, was a rioter pushing police officers and his conduct is not protected by the First Amendment.

Apparently seeking to identify "a substantial number" of unconstitutional applications of § 231(a)(3), Muntzer contends the statute's prohibitions would apply to someone who "flips off officers to distract or to encourage resistance," or "records police activity with a cell phone." Def.'s Mot. at 16-17. He also contends that "civil disorder" which is "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of injury to the property," is "extremely far-reaching." *Id*. at 16-17. This would apply, he contends, to "three teenagers whose skateboarding damages property." *Id.* at 17.

Muntzer's examples do not demonstrate that § 231(a)(3) is unconstitutionally overbroad. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984); *see also Howard*, 2021 WL 3856290, at *11 (rejecting overbreadth claim that "the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an 'act' that 'attempted to obstruct' an officer performing her lawful duties"). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council of City of Los Angeles*, 466 U.S. 789, 801 (1984). Muntzer identifies no such cases, and no wonder. Laws like § 231(a)(3) that are "not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124. Indeed an "overbreadth challenge" to such a law will "[r]arely, if ever … succeed." *Id.*

And because "the statute does not attempt to curtail speech the defendants may not challenge it as vague or overly broad if their own conduct may be constitutionally prohibited, since … one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *Mechanic*, 454 F.2d at 853 (citing *United States v. Raines*, 362 U.S. 17, 21 (1960)). Muntzer was not found guilty because of his speech, he was found guilty because he physically obstructed officers by pushing them. Finally, "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1)

involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Id.*

As acknowledged by Muntzer, the Eleventh Circuit recently rejected similar claims in a case with analogous facts. Def.'s Mot. at 2. In *Pugh*, the defendant argued her conviction under § 231(a)(3) violated the First Amendment because the statute "applied to a range of speech and expressive conduct, including 'yell[ing] at police to desist from an arrest, . . . flip[ping] off officers to distract or to encourage resistance, or . . . record[ing] police activity with a cell phone.'" 90 F.4th at 1329. The Eleventh Circuit rejected her arguments, stating, "we cannot say Section 231(a)(3) affects much speech at all." *Id.* at 1329-1330 (stating that the terms "obstruct," "impede," or "interfere" would not apply to speech or expressive conduct, "except at the margins").

Muntzer has given this Court no reason to depart from the unanimous holdings of other judges in this district and elsewhere.

*Section 231(a)(3) is Content-Neutral, So Strict Scrutiny Does Not Apply*

Muntzer argues, "§ 231(a)(3) singles out forms of expression that contain messages that criticize, challenge, insult, or object to the actions of law enforcement officers. Thus, it is a content-based speech regulation." (Def.'s Mot. at 20).

As the Supreme Court has explained, a "regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A law may be content-based if the statute makes facial distinctions based upon a speaker's message or if the law was passed for a particular content-related purpose. *Id.* at 163-64. There is a strong "presumption of good faith" on the part of legislators. *Miller v. Johnson*, 515 U.S. 900, 916 (1995).

To determine whether a regulation is a content-based restriction of speech, a court considers whether the regulation, "on its face, draws distinctions based on the message a speaker conveys." *Reed,* 576 U.S. at 163 (citation omitted). If the law is facially content-neutral, the court then considers whether the regulation "cannot be justified without reference to the content of the regulated speech or [was] adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* at 164 (cleaned up) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

As the Eleventh Circuit recently found in rejecting an identical challenge, "Section 231(a)(3) is not a content-based regulation of speech. If it affects speech at all, Section 231(a)(3) is content-neutral." *Pugh,* 90 F.4th at 1332. *Pugh* explained that Section 231(a)(3) criminalizes "any act to obstruct, impede, or interfere" with officers, and does not "draw[ ] distinctions based on the message" conveyed by the relevant act. *Id.* at 1332 (citing *Reed*, 576 U.S. at 163). It applies "as long as the act is 'to obstruct, impede or interfere with any fireman or law enforcement officer' performing official duties." *Pugh,* 90 F. 4th at 1332. *Pugh* further rejected the claim that Section 231(a)(3) singles out expressions critical of law enforcement, observing that "the statute does not distinguish between acts that are critical of law enforcement and acts that are neutral toward, or favor, law enforcement." *Id.*; *accord Howard*, 2021 WL 3856290, at *7 (*"Section 231(a)(3) does not . . . punish an individual for holding a particular point of view"*).

In other words, to the extent that Section 231(a)(3) criminalizes expressive conduct, it does so based on whether the conduct obstructs, impedes, or interferes with officers during a civil disorder. 18 U.S.C. § 231(a)(3). Whether a person pushes over a barricade while shouting, "I back the blue!" or "Defund the police!", the statute treats them the same. *Cf. McCullen v. Coakley*, 573

U.S. 464, 479 (2014) (holding that a statute was not a content-based restriction because "[w]hether petitioners violate[d] the [a]ct 'depend[ed]' not 'on what they say,' . . . but simply on where they say it" (citation omitted) (*quoting Holder v. Humanitarian L. Project*, 561 U.S. 1, 27 (2010)).

Therefore, the law is content neutral and strict scrutiny does not apply.[5]

---

[5] Even if Section 231(a)(3) regulated speech to a degree that a level of scrutiny applied to this analysis, the Court should apply intermediate scrutiny under *O'Brien*, 391 U.S. 367, not strict scrutiny. This would be the appropriate level of scrutiny because Section 231(a)(3) regulates conduct that only incidentally affects speech and applies irrespective of any expressive content. Section 231(a)(3) easily survives intermediate scrutiny because it is narrowly tailored to advance important governmental interests in enabling police and firefighters to protect channels of commerce and federally protected functions from being disrupted by civil disorders. *See Ward*, 491 U.S. at 791 ("even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984)).

**IV.      Conclusion**

For the foregoing reasons, this Court should deny Muntzer's motion for a acquittal as to

Count Two.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


By:      /s/ *Brian D. Brady*
BRIAN D. BRADY
Trial Attorney, Department of Justice
D.C. Bar No. 1674360
601 D Street, N.W.
Washington, D.C. 20530
(202) 834-1916
Brian.Brady@usdoj.gov